IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMES KEETON**,

    Petitioner,

v.                                                                                                  Civil Action No. **3:19CV841**

**HAROLD W. CLARKE**,

    Respondent.

**REPORT AND RECOMMENDATION**

James Keeton, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Keeton challenges his conviction in the Circuit Court of Gloucester County ("Circuit Court") for rape and the revocation of a previously suspended sentence. (*Id.* at 1.) Keeton raises the following claims for relief:

    Claim One:     The evidence was insufficient to convict Keeton because the complaining witness was inherently incredible. (ECF No. 1, at 5.)[1]

    Claim Two:     Because insufficient evidence existed to convict Keeton of rape, the Circuit Court erred in revoking Keeton's probation based on the fact that he had committed the crime of rape. (*Id.* at 7.)

    Claim Three:     Keeton was denied the effective assistance of counsel because counsel advised Keeton not to testify at trial. (*Id.* at 8.)

    Claim Four:     Keeton was denied the effective assistance of counsel because "counsel failed to file a motion to reconsider the sentence and [a motion to] stay execution [] of [the] sentencing order." (*Id.* at 10.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

Respondent moves to dismiss on the grounds that Keeton's claims lack merit.[2] For the reasons that follow, it is RECOMMENDED that the Court DISMISS Claims One and Two as procedurally defaulted and DISMISS Claim Three for failure state a viable basis for § 2554 relief. It is further RECOMMENDED that the Court GRANT the Motion to Dismiss (ECF No. 10) and DENY the § 2254 Petition.

### A. Procedural History

Following a bench trial in the Circuit Court ("Circuit Court"), Keeton was convicted of rape. (ECF No. 1, at 1–2.) The Circuit Court sentenced Keeton to an active term of imprisonment of thirty (30) years. (ECF No. 12–1, at 2.)

Keeton appealed, asserting that the evidence was insufficient (present Claim One) and that the Circuit Court erred in revoking his previously suspended sentence for aggravated sexual battery (Claim Two). (ECF No. 12–2, at 1, 3–4.) The Court of Appeals of Virginia denied his petition for appeal. (*Id.* at 1.) Keeton pursued a further appeal to the Supreme Court of Virginia, which refused his petition for appeal. (ECF No. 12–3, at 1.)

Thereafter, Keeton filed a petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he raised the same claims he now presents in Claims Three and Four of his § 2254 Petition. (ECF No. 12–4, at 1–6; *see* ECF No. 12–5, at 1–6.) The Supreme Court of Virginia dismissed the petition. (ECF No. 12–5, at 6.)

### B. Applicable Constraints upon Federal Habeas Review

As explained above, in order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the

---

[2] Respondent "agrees that Keeton has exhausted his claims by presenting them to the Supreme Court of Virginia either on direct appeal or in his state habeas corpus petition." (ECF No. 12, at 3.) Given this concession, the Court provides an abbreviated discussion of the procedural history of this matter.

United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given the foregoing restrictions, the decisions of the Virginia courts figure prominently in this Court's opinion.

**C. Sufficiency of the Evidence–Claim One**

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of

3

the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id*. at 318.

In rejecting Keeton's challenge to the sufficiency of the evidence, the Court of Appeals of Virginia aptly summarized the evidence of Keeton's guilt as follows:

> [T]he evidence proved that on the evening of January 31, 2015, the victim, A.G., and appellant arranged to spend the night and drink alcohol at appellant's residence. A.G. explained appellant is her cousin but they had only gotten to know each other during the previous two years. A.G. and appellant had consumed alcohol together on other occasions. They arrived at appellant's house after 11:00 p.m. and, along with appellant's mother, they began drinking in the living room. When appellant's mother stated she wanted to lie down on the sofa, appellant suggested he and A.G. watch television in his room. A.G. testified she quickly consumed a large amount of alcohol and began to feel sick. She changed into a pair of shorts appellant provided for her. She explained that she vomited and then remembered only "laying [her] head back on the pillow." She awoke sometime later to discover appellant on top of her with his penis in her vagina. A.G. testified that "[w]hen [appellant] found out [she] was awake . . . he pushed off of [her]." She could feel appellant trying to pull her shorts up and cover her with a blanket. When she realized what had happened, she sent her boyfriend a text message asking him to come pick her up. A.G. quickly got dressed and left the residence. She walked down the street to meet her boyfriend. She reported the incident to her boyfriend immediately and to her mother later that morning. When she returned home, the police were there and she provided a statement. Later, a nurse examined her at the hospital.
> 
> Nurse examiner Sara Martinez performed the examination. She provided a detailed account of A.G.'s injuries which were consistent with "consensual rough intercourse" or "nonconsensual" intercourse. A.G. testified that a couple of weeks prior to the incident appellant asked her to perform oral sex on him. She refused.
> . . . .
> "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). For testimony to be inherently incredible, as a matter of law, "it 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Cardwell v. Commonwealth*, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting *Burke v. Scott*, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)). In other words, it must be "so contrary to human experience as to render it unworthy of belief." *Fisher v. Commonwealth*, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984).
> 
> Appellant argues the victim's testimony was inherently incredible. Specifically, he notes that although A.G. denied having a previous sexual

> relationship with appellant, appellant's witnesses testified to having seen them kissing and that A.G. had spent the night in appellant's room on several occasions. Appellant also asserts A.G. provided inconsistent accounts of how much alcohol she consumed and the evidence of the times of her text messages does not correspond to the timeline of the evening to which she testified.
>     A.G. provided a largely consistent and detailed account of the events. Her trial testimony was corroborated in part by the nurse examiner's testimony regarding her injuries and the evidence of her recent complaints. Additionally, the responding officer corroborated some of the details of A.G.'s testimony, noting the presence of the shorts A.G. described and the vomit in a trash can in appellant's room. The record supports the trial court's credibility determination. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of rape.

(ECF No. 12–2, at 1–3 (alterations in original).)

Considered in the light most favorable the prosecution, the above-described evidence is more than sufficient to find Keeton guilty of rape. Accordingly, it is RECOMMENDED that Claim One be DISMISSED.

### D. Revocation of Probation–Claim Two

Keeton contends that the Circuit Court abused its discretion by revoking Keeton's probation. This claim lacks merit for two reasons. First, the Circuit Court's alleged abuse of discretion does not provide a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law"). Second, even if the Court were inclined to find that the revocation of Keeton's probation was an abuse of discretion, "[o]nly a conclusion that the state court judge abused his discretion to the extent that petitioner was deprived of his federal constitutional rights to due process could justify any intrusion by this Court." *Cannady v. Everett*, No. 3:09CV41, 2010 WL 1169965, at *2 (E.D. Va. Mar. 24, 2010) (quoting *Klier v. Wainwright*, 345 F. Supp. 947, 949 (S.D. Fla. 1971)).

No such due process violation exists here. The pertinent Virginia statute expressly granted the trial court discretion to suspend imposition of a sentence and place Keeton on probation, and subsequently, to revoke that suspended sentence for any reasons the court deemed sufficient. Va. Code § 19.2–306(A) (West 2020) ("In any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence *for any cause the court deems sufficient* that occurred at any time within the probation period, or within the period of suspension fixed by the court.") (emphasis added). "Proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation." *United States v. Williams*, 378 F.2d 665, 666 (4th Cir. 1967). As discussed above, ample proof existed to prove beyond a reasonable doubt that Keeton committed the crime of rape while on probation. Accordingly, it is RECOMMENDED that Claim Two be DISMISSED.

**E. Alleged Ineffective Assistance with Respect to Keeton's Testimony**

In Claim Three, Keeton contends that his attorney performed deficiently by advising him not to testify. As aptly explained by the Supreme Court of Virginia, Keeton fails to demonstrate prejudice in conjunction with this claim.

> The record, including the trial transcript, the witness subpoenas, Investigator Mitchell Willoughby's report as quoted in the presentence report, counsel's memorandum summarizing his pre-trial meeting with petitioner, petitioner's signed pre-trial waiver of testimony, and the sworn affidavits prepared by petitioner, petitioner's grandfather, and counsel, demonstrates the victim alleged petitioner raped her while she was passed out during the early morning hours of February 1, 2015. During a custodial interview with Willoughby, petitioner claimed the victim "came on" to him, gave him "hickies" on his neck, and had consensual sexual intercourse with him. Willoughby's report states petitioner "provided numerous inconsistent statements and lies" during the interview. For example, petitioner told Willoughby he "had not been seeing any other girls" at the time. However, Brittany Heasley, whom petitioner said had visited him only briefly the day before the alleged rape, told Willoughby she had spent three hours at petitioner's home and was responsible for the "hickies." The Commonwealth subpoenaed Willoughby and Heasley to appear at petitioner's bench trial.

The day before trial, petitioner signed a document entitled "Voluntary Waiver of Testimony." It states petitioner discussed with counsel whether he should testify, understood the Commonwealth could question him about his prior felony record, told counsel he was worried the Commonwealth's cross-examination questions might confuse him, and voluntarily waived his right to testify, believing it was in his best interests to do so.

At trial, the victim testified she and petitioner were distant relatives, had known each other for about two years, and would often drink alcohol together. The victim acknowledged sleeping in petitioner's bed on a prior occasion but denied having a sexual relationship with petitioner and testified she had rebuffed an earlier sexual advance because they were related and she had a boyfriend. On the night of January 31, 2015, the victim accepted petitioner's invitation to drink vodka at his home. From about 11:00 p.m. until about 12:30 or 1:00 a.m., the victim drank about twenty-six shots of vodka, first in the living room with petitioner and his mother, and then in petitioner's bedroom. Although she felt disoriented and nauseous, the victim changed into a pair of petitioner's shorts in the bathroom before she vomited in a trash can and fell asleep on petitioner's bed. At 3:00 a.m., the victim awoke to find petitioner positioned on top of her. Her shorts were pulled down and her bra was not fully on her. As she pushed petitioner off her body, the victim felt his penis slide out of her vagina. The victim got dressed and sent her boyfriend several text messages imploring him to get her, and eventually he did. Later that morning, the victim's mother called the police to report the rape.

A police officer who executed a search warrant of petitioner's home testified he found an empty bottle of the vodka the victim described and a trash can that contained vomit. A sexual assault nurse examiner testified she found evidence of blunt force trauma in the victim's vaginal area that was inconsistent with consensual sexual intercourse, except for consensual "rough intercourse." The Commonwealth did not call Investigator Willoughby and obtained a capias for Heasley due to her failure to appear.

During the defense's case-in-chief, the court admitted a log of the victim's text message activity. Between 1:37 a.m. and 1:46 a.m., the victim sent her boyfriend several text messages stating she was drunk, was going to sleep on the couch, wanted to be with the boyfriend, wanted him to come get her, and that she was not okay. The victim resumed text messaging at 2:54 a.m., when she begged the boyfriend to come get her and eventually sent a message explaining she had woken up to find petitioner on top of her.

The defense's expert witness in forensic toxicology testified, based on the victim's height and weight and the amount of alcohol the victim claimed to have consumed, the victim's blood alcohol content ("BAC") would have peaked at .30 to .40 grams per deciliter, approaching "the point of alcohol poisoning," between 1:00 a.m. to 2:30 a.m. The expert opined it was improbable for a person with such an elevated BAC to maintain the dexterity required to compose the text messages the victim sent during that time frame. Similarly, a person in that state would have great difficulty walking, changing clothes, or having a conversation. The expert testified the victim's BAC would have been in the range of .20 to .30 by 3:00 a.m. On cross-examination, the expert acknowledged people sometimes overestimate

how much alcohol they consume, and the victim may have done so considering the bottle from which the victim drank contained about seventeen shots. Moreover, the bottle contained enough alcohol for the victim to become intoxicated, and vomiting and losing consciousness are not inconsistent with intoxication. Upon questioning from the court, the expert opined a person with a BAC of .20 to .25, who is still conscious, could understand and consent to a sexual act, but might not remember consenting.

In addition, the ex-boyfriend of petitioner's mother testified the victim had spent the night at the home petitioner and his mother shared six or seven times. Petitioner and the victim acted like "boyfriend and girlfriend," stayed in petitioner's bedroom, and made both male and female "sexual noise[s]" from behind the closed door. Another defense witness testified she drove the victim to petitioner's home on the night of January 13, 2015, less than three weeks before the alleged rape, and the victim brought an overnight bag. Upon arriving, the victim was "all over" petitioner and kissed him.

The court noted it could find petitioner guilty, even if the victim had a prior sexual relationship with petitioner, the victim overstated how much alcohol she drank, and the nurse examiner's testimony was inconclusive, so long as it accepted the victim's allegation that petitioner penetrated while she was asleep. The court explained, "I don't have any direct evidence to the contrary in an attempt to impeach her testimony. In other words, I don't have any testimony from any other witness that says no, that's not the way it happened."[3]

Furthermore, in finding the victim credible, the court remarked "the unrebutted evidence is that she was awakened while the penis was already in her, which tells me that she didn't give consent when the activity began."

On the day after the trial occurred, counsel prepared a memorandum for the file stating petitioner "consistently expressed reluctance to testify," because petitioner said he had difficulty understanding complex terms and did not want to be questioned about his prior felony record. According to the memorandum, counsel acknowledged these concerns but advised petitioner that his testimony would constitute direct evidence of consensual sex; furthermore, counsel revisited the subject immediately before trial and during the defense's case-in-chief, and petitioner again declined to testify.

According to the sworn affidavits submitted by petitioner and petitioner's grandfather, counsel advised petitioner not to testify because doing so would not be in petitioner's best interests and his testimony was not needed to obtain an acquittal. Petitioner alleges in his affidavit that he questioned this advice on the day of trial and decided to testify after observing the victim's testimony. Petitioner told counsel he wanted to testify, but counsel replied petitioner had waived his right to testify and "was prevented from rescinding that waiver as a matter of law."

By contrast, in his sworn affidavit, counsel states he discussed the advantages and disadvantages of testifying several times with petitioner, and the decision was petitioner's to make. Notwithstanding the execution of the waiver of

---

[3] Of course, the Circuit Court could not use Keeton's silence as evidence of his guilt. The Court reads the Circuit Court's comments merely as an observation that victim's testimony about the rape itself was consistent and was not rebutted or significantly impeached by Keeton's evidence.

8

>rights form, counsel told petitioner he could change his mind and testify, but petitioner opted not to do so. Counsel states in his affidavit that he never prohibited petitioner from testifying.
>
>>This Court finds it unnecessary to resolve the conflict between petitioner's and counsel's versions of events. Assuming without deciding counsel prevented petitioner from testifying, petitioner has failed to show counsel's errors were "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quotations and citation omitted); *see also Sayre v. Anderson*, 238 F.3d 631, 634-35 (5th Cir. 2001) (petitioner alleging his lawyer failed "to call him to the stand, despite his repeated requests," was required to demonstrate deficient performance and prejudice). Testifying would have brought significant risk for petitioner. *See Mullins*, 315 F.3d at 456 ("The difficulty is that a denial by Mullins from the stand would come at a high price."). In addition to impeaching petitioner based on his prior felony convictions, the Commonwealth could have exploited any inconsistencies between petitioner's testimony and his statements to Investigator Willoughby and, if necessary, called Willoughby as a rebuttal witness. Moreover, if he was questioned about the "hickies" and testified the victim caused them as part of a consensual sexual encounter, the Commonwealth could have sought a continuance to secure Heasley's presence to rebut petitioner's testimony. Furthermore, although the victim's testimony required no corroboration, *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984), several pieces of evidence, including the nurse examiner's finding of blunt force trauma in the victim's vaginal area, the defense expert's acknowledgement the victim could have become intoxicated enough to pass out even if she overstated how much vodka she drank, and the presence of vomit inside the trash can, tended to corroborate the victim's testimony. Under the circumstances, "[w]e can only say that [petitioner's] testimony *might* have persuaded, but not that there is a reasonable probability that it would have done so." *Id.* Thus, petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

(ECF No. 12–5, at 1–5 (alterations in original except for addition of footnote 3).) This Court's review of the evidence, including Keeton's affidavit, supports the conclusion that there was no substantial likelihood of a different result had Keeton testified.[4] *Harrington v. Richter*, 562 U.S.

---

[4] Keeton's affidavit contains few, if any details, regarding the substance of what he would have to testified to at trial. Petition for a Writ of Habeas Corpus Ex. 1, *Keeton v. Clarke*, No. 190137 (Va. filed Jan. 28, 2019). For example, Keeton fails to explain how he would have accounted for his lies to the police about the source of the hickies on his neck. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation").

9

86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable." (citing *Strickland*, 466 U.S. at 693)).

### F.  Alleged Ineffective Assistance with Respect to a Motion for Reconsideration

In Claim F, Keeton contend that he was denied the effective assistance of counsel because "counsel failed to file a motion to reconsider the sentence and [a motion to] stay execution [] of [the] sentencing order." (ECF No. 1, at 10.)  This claim lacks merit because, as the Supreme Court of Virginia observed, "[a]bsent special circumstances not alleged here, a motion to reconsider or reduce a criminal sentence is not a 'critical stage' of the 'criminal prosecution," and therefore, the petitioner had no right to counsel on such a motion."  (ECF No. 12–5, at 5–6 (citing *Director v. Kozich*, 290 Va. 502, 513 (2015)); *see United States v. Taylor*, 414 F.3d 528, 536 (4th Cir. 2005) (citation omitted) (noting that a motion to reduce a sentence under Rule 35(b) is not a "trial-related proceeding and, therefore, the Sixth Amendment cannot serve as a source of [a defendant's] claimed right to counsel"); *United States v. Legree*, 205 F.3d 724, 729 (4th Cir. 2000) (rejecting a defendant's argument that the trial court "denied him due process by not . . . appointing counsel to represent him on the motion for reduction of sentence").  Moreover, Keeton fails to demonstrate any reasonable probability of a different result had counsel taken the proper steps in filing a motion for a reconsideration of Keeton's sentence.  Accordingly, it is RECOMMENDED that Claim Four be DISMISSED.

### G.     Conclusion

Accordingly, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 10) be GRANTED, Keeton's claims be DISMISSED, the § 2254 Petition (ECF No. 1) be DENIED, and the action be DISMISSED.  It is further RECOMMENDED that the Court DENY a certificate of appealability.

Keeton is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Keeton and counsel for Respondent.

It is so ORDERED.

/s/
Roderick C. Young
United States Magistrate Judge

Date: July 22, 2020
Richmond, Virginia